**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MEREDITH CHADWICK RAY and PHILLIP RAY,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **CASE NO:  3:07-cv-175** |
| **vs.** | ) ) | |
| **FORD MOTOR COMPANY, et al.** | ) ) | |
| **Defendants.** | ) | |

**OPPOSITION TO DEFENDANTS MOTION TO DISMISS FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE, PLAINTIFFS' MOTION FOR DISCOVERY**

## I.        INTRODUCTION

Plaintiffs hereby file their opposition to Defendant Pontiac Coil's Motion to Dismiss For Lack of Personal Jurisdiction.  In opposition thereto, Plaintiffs will show that Pontiac Coil has sufficient contacts with the State of Alabama to justify the imposition of personal jurisdiction.  In the alternative, Plaintiffs state that Pontiac Coil's motion should be stayed until discovery that is material to the disposition of the issue of personal jurisdiction can be completed.

## II.        STANDARD OF REVIEW

The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).  "A *prima facie* case is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict." Id. at 492.

> Where, as here, the defendant submits affidavits to the contrary, the
> burden traditionally shifts back to the plaintiff to produce evidence
> supporting jurisdiction unless those affidavits contain only conclusory
> assertions that the defendant is not subject to jurisdiction. *See Posner v.
> Essex Ins. Co.,* 178 F.3d 1209, 1215 (11th Cir.1999). Where the plaintiff's
> complaint and supporting evidence conflict with the defendant's affidavits,
> the court must construe all reasonable inferences in favor of the plaintiff.
> *See Madara,* 916 F.2d at 1514.

Meier ex rel. Meier v. Sun Intern. Hotels, Ltd., 288 F.3d 1264, 15 Fla. L. Weekly Fed. C
467, C.A.11 (Fla.) 2002 at 1269.

## III.    FACTS

1.    Pontiac Coil advertises on its website that it is a "key player in the
electrical coil, solenoid, and electrical/mechanical manufacturing field" with "facilities
located throughout North America and Europe." **Exhibit A.**

2.    Pontiac Coil's products are available for purchase by any individual or
company, nationwide, via its website. **Exhibit B.**

3.    On the Pontiac Coil website, in a non-exhaustive list, Pontiac Coil
identifies Ford Motor Company as a company Pontiac Coil does business with. **Exhibit
C.**

4.    Pontiac Coil, under Ford's direction, manufactured a component part of
the subject vehicle model which was sold and distributed throughout the United States,
including Alabama.

> Q.    All right.  So UTI originally manufactured the BTSI.
> A.    No.  UTA.
> Q.    UTA.  And then that change was made to?
> A.    Well, you -- you asked me the solenoid before, not the BSI.
> The solenoid was manufactured by UTA, and then the
> solenoid for the 2002 is manufactured by Pontiac Coil.

**Exhibit D, (Mark Taylor Depo. at 52).**

5.     Ford's Corporate Representative, Mark Taylor, stated in his deposition that the solenoid in this case is a type of "black box" component.  A black box component is designed by a supplier – in this case Pontiac Coil – using Ford's basic instructions regarding performance criteria.  The solenoid is then shipped to another supplier chosen by Ford who assembles the subcomponents, and then those components are assembled into the vehicle by Ford.

> Q.     Okay.  And I believe you said before that the manufacture of the solenoid was basically a black box.
> A.     Correct.
> Q.     And can you explain what -- what you mean by a black box?
> A.     Black box -- a black-box design is where you give just the simplest of attribute data to the supplier, and then from that they run and make their own design for a specific envelope size, and you're just basically concerned with specific performance criteria of that component.
> Q.     So basically a supplier manufactures and provides the -- this component here, a solenoid, and basically somebody else puts it -- either you or another supplier puts it together in another system?
> A.     That's correct.   You get parts from many different suppliers, and then they are assembled into eventually subcomponents, and then those components are into -- assembled into the vehicle.

**Exhibit E, (Mark Taylor Depo. at 85 - 86).**

**IV.    LAW**

Personal jurisdiction requires a two-part analysis to determine if (1) a defendant falls under the long arm statute of a state; and (2) whether the requisite minimum contacts are met so that exercise of jurisdiction over the defendant is consistent with due process.  *See* Morris *supra*; International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).  Alabama's long arm statute confers personal jurisdiction to the

maximum extent allowed under the Federal Constitution. Thus, the requirement for jurisdiction is met by a showing of "minimum contacts" with a forum so that the maintenance of a lawsuit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 362 U.S. 310 (1945). With regards to minimum contacts, a defendant must "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Morris at 492, (quoting Burger King v. Rudzewicz, 471 U.S. at 476, 105 S.Ct. at 2184).

In the subject case, to establish minimum contacts, courts rely upon a "stream of commerce" analysis. The stream of commerce theory was first addressed in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98; 100 S.Ct. at 567 (1980):

> The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state.

Several years later, in Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L. Ed. 2d 92 (1987), the Supreme Court was called upon again to discuss the stream of commerce analysis.

In Asahi, a plurality opinion, Justice O'Connor devised a stream of commerce "plus" test. Under the "plus" theory, in addition to placing a product into the stream of commerce, a defendant must have acted with "an intent or purpose to serve the market in the forum state." Asahi 480 U.S.at 112. However, Asahi actually espoused three different applications of the stream of commerce theory. Justice O'Conner's theory was the most restrictive with the required "plus" test. Justice Stevens, joined by two other

justices in a separate concurrence, had a less restrictive approach.  He pointed out the difficulty in drawing an "unwavering line … between 'mere awareness' that a component will find its way into the forum state and 'purposeful availment' of the forum's market." Asahi at 122.   To determine "whether or not the conduct rises to the level of purposeful availment requires a constitutional determination that is affected by the volume, the value, and the hazardous character of the components" introduced into the stream of commerce.  Id.

Finally, Justice Brennen's theory was the broadest of the minimum contacts tests. He, along with three other justices, concluded that placing the product into the stream of commerce was sufficient to constitute purposeful activity directed toward the forum state. "As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.  Nor will the litigation present a burden for which there is no corresponding benefit."   Asahi at 1034, 1035.

The precise application of the three differing theories of Asahi remains unclear. "In the time since the Asahi decision was handed down, the Eleventh Circuit has provided no clear guidance as to the appropriate weight to be accorded to the competing stream of commerce theories." CSX Transp., Inc. v. Preussag Intern. Steel Corp., 210 F. Supp.2d 1228, 1234, (M.D.Ala. 2002).  For example, in Vermeulen v. Renault U.S.A., Inc., 975 F.2d 746, 757, (C.A.11th 1992), the court held that the stream of commerce plus analysis is satisfied by delivery into the stream of commerce with the expectation of purchases made in the forum state.  However, the court declined to comment on which standard was controlling since the Vermeulen case satisfied even the more restrictive

O'Connor stream of commerce plus test.  Then, in <u>Pitts ex rel. Pitts v. Seneca Sports, Inc</u>., 321 F.Supp.2d 1353, (D.C.Ga. 2004), a products liability action arising from injury caused by a tent pole, the court determined that there was personal jurisdiction over the defendant corporation from Massachusetts.  Since the defendant "distributed its tents nationally," it was "chargeable with knowledge that some would ultimately be sold in Georgia Kmart stores." <u>Pitts</u> at 1357.  The court in <u>Pitts</u> appears to have followed the Stevens and/or Brennen theories regarding stream of commerce from <u>Asahi</u>.

## V.     ARGUMENT

In the subject case, the facts and limited pre-discovery information available to Plaintiffs are sufficient to satisfy the requirements of jurisdiction under applicable law, regardless of which test is applied.  Here, Pontiac Coil did not just place a product into the stream of commerce.  Pontiac Coil designed a component part of Ford's vehicle, using Ford's instructions for performance criteria.  Therefore, the Defendant knew that its part would be installed in the subject vehicle model and then be distributed throughout the United States, including Alabama.  "[T]here must come a point at which the volume or the value of sales knowingly garnered from a particular market should rise to the level of minimum contacts, regardless of whether a defendant actively sought out the market in question." <u>CSX</u> at 1233.  Thus, according to Justice Stevens' stream of commerce test, "the decision to continue to pursue a particular business model whose success depends in part on the market where a product eventually finds itself can sufficiently constitute 'purposeful availment.'" <u>CSX</u> at 1233.  The success of Pontiac Coil's business designing a component part of Ford's vehicle is based upon the market where the subject vehicle

eventually found itself by distribution throughout the United States - Alabama.  When a defendant's activities constitute a concerted effort to profit from the market in a particular forum, jurisdiction is not unreasonable in that forum when the defendant's activities have been the source of injury to people within that forum. <u>World-Wide Volkswagen</u>, 444 U.S. at 297, 100 S.Ct. 559.

Justice Stevens spoke not only of volume, but also the value and hazardous character of the threat posed by a defendant's conduct. <u>Asahi</u>, 480 U.S. at 122, 107 S.Ct. 1026.  Although not inherently dangerous, Pontiac Coil's solenoid is a vital component of the subject vehicle.  Should the solenoid fail to properly operate, a hazardous condition – the vehicle failing to remain in park - can occur.  Similarly, a gun safety switch is not inherently dangerous but if that safety fails in its single function, it creates a dangerous and hazardous condition.  As Justice Stevens pointed out, the hazardous character of the threat posed by a defendant's conduct affects the determination of the level of "purposeful availment." <u>Asahi</u> at 122.  Pontiac Coil purposefully availed itself of the benefits of the forum that it now asserts has no jurisdiction.

Pontiac Coil designed and supplied the solenoid for Ford's vehicle, with the knowledge that its part would be installed in the subject vehicle model and then distributed throughout the United States, including Alabama.  Thus, personal jurisdiction is established as a result of Pontiac Coil's activity directed towards the State of Alabama and Pontiac Coil's contacts are more than adequate to meet the requirements set forth by <u>Asahi</u> and <u>Morris</u>.

Accordingly, the facts of this case dictate that Pontiac Coil has met the threshold of "minimum contacts" with the State of Alabama. Plaintiffs respectfully request that this Court deny the defendant's motion to dismiss for lack of jurisdiction.

## VI.    MOTION FOR DISCOVERY

In the alternative, Plaintiffs request that they be allowed discovery on this issue. Pontiac Coil was only recently added as a Defendant and Plaintiffs have not had the opportunity to conduct discovery.

It is well established that a qualified right to jurisdictional discovery exists. *See, e.g.,* Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 729-31 (11th Cir.1982).

> Federal courts have generally authorized jurisdictional discovery antecedent to resolving Rule 12(b)(2)motions to dismiss for want of personal jurisdiction. *See, e.g.,* In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (2nd Cir.2003) (reversing dismissal of claims against defendant for lack of personal jurisdiction where lower court denied plaintiffs' request to engage in jurisdictional discovery prior to dismissal); Posner, 178 F.3d at 1214 n. 7 (recognizing qualified right to conduct jurisdictional discovery).

Matthews v. Brookstone Stores, Inc, 431 F.Supp.2d 1219, S.D.Ala.,2006. "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." Arista Records, Inc. v. Sakfield Holding Co. S.L., 314 F.Supp.2d 27, 29 (D.D.C.2004); See also Diamond Chem. Co. v. Atofina Chems., Inc., 268 F.Supp.2d 1, 15 (D.C.Cir.2003) (quoting El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 676 (D.C.Cir.1996)).

In the subject case, Pontiac Coil asserts it has no direct relationship with Ford, alleging that it "does not sell or market solenoid assemblies directly to Ford" and that it

does not "sell products directly to Ford Motor Company." **See Defendant's Evidentiary Submission and Brief in Support of Pontiac Coil, Inc's Motion to Dismiss, at 2 - 3**. However, the evidence shows otherwise.  Ford's corporate representative, Mark Taylor, testified that the solenoid in this case is a type of "black box" component.  **Exhibit E**.  A black box component is designed by a supplier using Ford's basic instructions regarding performance criteria.  **Id**.  The solenoid is then shipped to another supplier chosen by Ford who assembles the subcomponents, and then those components are assembled into the vehicle by Ford.  **Id**.  Ford supplies the performance criteria for the solenoid to Pontiac Coil.  Ford's testimony certainly suggests that there is a direct relationship between this Defendant and Ford, contrary to Pontiac Coil's assertion.  Pontiac Coil's website even lists Ford as a customer.  **Exhibit C.**

Plaintiffs only recently became aware of Defendant Pontiac Coil's role in the design of the solenoid at issue.  **Exhibit D, (September 14, 2007 Depo of Mark Taylor).**  Plaintiffs immediately moved to amend the complaint to add Pontiac Coil as a Defendant.  The Court granted that motion on October 23, 2007.  Plaintiffs have not had the opportunity to conduct discovery with this defendant.  Therefore, Pontiac Coil's motion is premature, as discovery that is material to the disposition of the issue of personal jurisdiction has not been completed at this time.  Plaintiffs request additional discovery and deposition testimony be taken before this Court rules on Defendant's Motion to Dismiss.

                                                      ___/s/ D. Michael Andrews_____

                                                          Attorney for Plaintiffs

OF COUNSEL:
BEASLEY, ALLEN, CROW, METHVIN,
    PORTIS & MILES, P. C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343
(334) 954-7555 – facsimile
mike.andrews@beasleyallen.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing document with the Clerk of Court using the CM/ECF system to the following CM/ECF participants:

Bradley J. McGiboney
D. Alan Thomas
Huie, Fernambucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, Alabama 35223
(205) 251-1193
(205) 251-1256 - Facsimile
**Attorneys for Ford Motor Company**

John C. Morrow
Geoffrey S. Bald
Burr & Forman LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
(205) 251-3000
(205) 458-5100 - Facsimile
**Attorneys for Pontiac Coil, Inc.**

Robert H. Sprain, Jr.
Irene Elizabeth Blomenkamp
Sprain & Meighen, P.C.
1707 29th Court South
Birmingham, Alabama 35209
(205) 437-3232
(205) 802-7083 – Facsimile
**Attorneys for Visteon Corporation**

This **9th** day of **January**, **2008**.

_____ /s/ D. Michael Andrews_____

Of Counsel







SUPPLIER PORTAL

We design, manufacture, and deliver Electrical Coils, Solenoids and Electro Mechanical Devices. With outstanding engineering capabilities, quality driven manufacturing, and proven processes, we **excel** in Product Development and **deliver** robust results.

### 50 years of movement

We are pleased to have been a part of our customers' successes for over **50 years**.

With facilities located in North America and Europe, we are a key player in the Automotive, Trucking, Mobile Equipment, Medical, Data & Telecommunications industries.

*the* **strength** *of our* **movement** *is…*

*Focusing* **on the individual needs of each customer**

*Designing* **smart, value added, value engineered products**

*Realizing* **both performance and manufacturing efficiency**

*Sustaining* **quality using proven systems and process controls**

*Delivering* **innovative, reliable, and affordable products**

Home  |  About  |  Capabilities  |  Products  |  Suppliers  |  Contact

Home | About | Capabilities | Products | Suppliers | Contacts

*catalog* **products**



Pontiac Coil offers a broad range of **standard components** which our engineers **expertly modify** to meet the more traditional needs of our customers. Regardless of the application, however, Pontiac Coil's range of latching, open-frame and tubular solenoids are all designed for manufacturability and **unsurpassed quality**.

Pontiac Coil standard catalog products include the following:

**Open Frame Solenoids**
**Closed Frame Solenoids**
**Tubular Solenoids**
**Latching Solenoids**

For more information and convenient ordering of any Pontiac Coil standard catalog product, please visit:



Phone: **800-344-4539** or **218-681-6674**

### directing **movement**



**for:**

*Ada Technology, Incorporated*

*American Axle & Manufacturing*

*Behr America*

*BorgWarner*

*Cummins Engine Company*

*DaimlerChrysler Corporation*

*Delphi*

*Dura Automotive*

*Eaton*

*Ficosa International*

*Ford Motor Company*

*General Motors Corporation*

*GHSP*

*Numatics, Inc.*

*Owens Illinois*

*Paulstra*

*Robert Bosch Company*

*Teleflex Automotive*

*USUI International*

*ZF Lemforder*

*and more...*

**Home**  |  **About**  |  **Capabilities**  |  **Products**  |  **Suppliers**  |  **Contact**

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALABAMA

NORTHERN DIVISION



MEREDITH CHADWICK RAY

and PHILLIP RAY,

          Plaintiffs,

     vs.             Case No. 3:07-cv-175

FORD MOTOR COMPANY, ET AL,

          Defendants.

_____

The Videotaped Deposition of MARK KIMBERLY TAYLOR,

Taken at 2501 Worldgateway Place,

Romulus, Michigan,

Commencing at 9:03 a.m.,

Friday, September 14, 2007,

Before Mary Jo Power, CSR-1404, RMR.

f40020d3-63ee-4a7d-b7f7-c20ff642cded

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 52

```
 1        documents.  You'd have to go to either Visteon or
 2        Presta.
 3   Q.   Those are off-site document storage?
 4   A.   No, those are the suppliers of those -- that component
 5        now.
 6              Visteon was a supplier.  It's a sole
 7        entity.  It's like, you know, buying something at
 8        Krogers or your Safeway or A&P, whatever your grocery
 9        store is.  And that -- that business was -- Visteon
10        sold that business to Presta.
11   Q.   Visteon sold the business to?
12   A.   Presta.
13   Q.   Presta?
14   A.   P-r-e-s-t-a.
15   Q.   All right.  So UTI originally manufactured the BTSI.
16   A.   No.  UTA.
17   Q.   UTA.  And then that change was made to?
18   A.   Well, you -- you asked me the solenoid before, not the
19        BSI.
20              The solenoid was manufactured by UTA, and
21        then the solenoid for the 2002 is manufactured by
22        Pontiac Coil.
23   Q.   All right.
24   A.   And the B -- the entire BTSI -- BTSI is -- it's an
25        entire system.  It's just not one specific component,
```

f40020d3-63ee-4a7d-b7f7-c20ff642cded

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALABAMA

NORTHERN DIVISION



MEREDITH CHADWICK RAY

and PHILLIP RAY,

            Plaintiffs,

    vs.                    Case No. 3:07-cv-175

FORD MOTOR COMPANY, ET AL,

            Defendants.

_____


        The Videotaped Deposition of MARK KIMBERLY TAYLOR,

        Taken at 2501 Worldgateway Place,

        Romulus, Michigan,

        Commencing at 9:03 a.m.,

        Friday, September 14, 2007,

        Before Mary Jo Power, CSR-1404, RMR.

f40020d3-63ee-4a7d-b7f7-c20ff642cded

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

1       with a little clip called a Tinnerman clip, that no

2       sharp edges were there so they'd injure their fingers.

3  Q.   Okay.

4  A.   And this was all part of the process.

5             And then that -- then they were

6       subsequently sent to the Indianapolis plant and

7       assembled into the steering column for the trucks.

8  Q.   Okay.  And I believe you said before that the

9       manufacture of the solenoid was basically a black box.

10  A.   Correct.

11  Q.   And can you explain what -- what you mean by a black

12       box?

13  A.   Black box -- a black-box design is where you give just

14       the simplest of attribute data to the supplier, and

15       then from that they run and make their own design for

16       a specific envelope size, and you're just basically

17       concerned with specific performance criteria of that

18       component.

19  Q.   So basically a supplier manufactures and provides the

20       -- this component here, a solenoid, and basically

21       somebody else puts it -- either you or another

22       supplier puts it together in another system?

23  A.   That's correct.  You get parts from many different

24       suppliers, and then they are assembled into eventually

25       subcomponents, and then those components are into --

f40020d3-63ee-4a7d-b7f7-c20ff642cded

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 86

1       assembled into the vehicle.

2                   MR. McGIBONEY:  Okay.  That's all the

3       questions I have.  Thank you.

4                   THE WITNESS:  Thanks.

5                   MR. ANDREWS:  Just one follow-up.

6                       RE-EXAMINATION

7    BY MR. ANDREWS:

8    Q.   Did you say that you -- Ford used blind workers to

9         assemble part of the car?

10   A.   Ford did not.  There was a subsupplier called Trylon

11        which made the insert plate, and they hooked the

12        solenoid onto the insert plate, and then that was

13        shipped to Indianapolis.

14   Q.   For the BTSI?

15   A.   Correct.  For the F-series.

16   Q.   So there were -- there are cars out there that the

17        BTSI was assembled by blind workers?

18   A.   Yes, sir.

19                  MR. ANDREWS:  That's all I have.  Thank

20        you.

21                      RE-EXAMINATION

22   BY MR. McGIBONEY:

23   Q.   Just to follow up on that, the use of blind workers

24        was specifically a safe -- an added safety measure in

25        the design process; is that correct?

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

f40020d3-63ee-4a7d-b7f7-c20ff642cded