IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MEREDITH CHADWICK RAY and PHILLIP RAY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION NO.  3:07cv175-WHA-TFM ) (WO) |
| FORD MOTOR COMPANY, | ) ) |
| Defendant. | ) |

### **ORDER**

This cause is before the court on Defendants's Omnibus Motion in Limine (Doc. # 156). The Omnibus Motion raises eighteen individual categories of evidence of which the Plaintiffs object to six. Each of the Defendant's eighteen categories will be handled in turn.

**1.**

The Defendant **first** seeks to exclude "evidence concerning NHTSA investigation No. C8-02." *Id*. at 2. The Plaintiffs do not intend to offer this evidence as long as the Defendant does not "open the door" to this evidence. Accordingly, this motion is GRANTED, and Plaintiffs are not to refer to evidence concerning the NHTSA investigation without first taking that evidence up outside of the presence of the jury.

**2.**

The Defendant **second** seeks to exclude "evidence concerning settlement of [the] C8-02 investigation." (Doc. # 156 at 2).  The Plaintiffs do not intend to offer this evidence as long as Ford does not "open the door" to this evidence.  Accordingly, this motion is GRANTED, and Plaintiffs are not to refer to evidence concerning the settlement of NHTSA C8-02 investigation without first taking that evidence up outside of the presence of the jury.

### 3.

The Defendant **third** seeks to exclude "evidence of memoranda prepared by former NHTSA administrator Joan Claybrook." (Doc. # 156 at 3).  The Plaintiffs do not intend to offer this evidence as long the Defendant does not "open the door" to this evidence.  Accordingly, this motion is GRANTED, and Plaintiffs are not to refer to evidence concerning the NHTSA administrator Joan Claybrook without first taking that evidence up outside of the presence of the jury.

### 4.

The Defendant **fourth** seeks to exclude evidence of other similar incidents involving Mercury Mountaineers and other Ford vehicles.  (Doc. # 156 at 4).  The Defendant argues that this evidence is irrelevant, prejudicial, and inadmissable hearsay.  The Plaintiffs counter by citing Eleventh Circuit precedent that "[e]vidence of similar occurrences [involving the Defendant] may be offered to show a defendant's notice of a particular defect or danger, the magnitude of the defect or danger involved, the defendant's ability to correct a known defect, the

lack of safety for intended uses, the strength of a product, the standard of care, and causation." *Hessen v. Jaguar Cars, Inc.*, 915 F.2d 641, 650 (11th Cir. 1990). However, "because of the potential prejudicial impact of prior occurrences or accidents, such evidence is only admissible if conditions substantially similar to the occurrence caused the prior accidents, and the prior incidents were not too remote in time." *Hessen*, 915 F.2d at 649. Therefore, in order for this court to determine the validity of similar occurrence evidence, some factual background would have to be presented.

Furthermore, the Plaintiffs argue that a ruling on this issue is premature because the motion as worded is over broad. The court agrees that the motion is not ripe for decision at this point in time because no specific similar occurrences have been raised. Since the determination of similar occurrence relevance is so fact intensive, *see, e.g.*, *Id.* at 651, this court cannot make a determination about the admissibility of such evidence at this time. Furthermore, the court cannot tell at this time whether the Plaintiffs will be able to overcome the hearsay objection. Accordingly, this court will reserve judgment on this issue until such evidence is sought to be presented by the parties. The Plaintiffs are not to refer to evidence concerning similar occurrences without first taking that evidence up outside of the presence of the jury. The parties are directed to be prepared to discuss this matter in detail, including specific evidence sought to be introduced, at the pretrial conference.

**5.**

The Defendant **fifth** seeks to exclude "evidence of defects and recalls other than the alleged defect at issue in this case." (Doc. # 156 at 4). The Defendant's concern is that the

Plaintiffs will seeks to introduce: other defects in the 2002 Mercury Mountaineer unrelated to the BTSI and evidence of allegedly similar defects found in other automobiles. The Defendant's objection is that such evidence would be prejudicial, immaterial, and irrelevant to the Plaintiffs' claim. The Plaintiffs counter by explaining that they have no intention of offering evidence of defects not at issue in this claim unless the door is opened to the topic by the Defendant. The Plaintiffs will, however, likely seek to use evidence of similar BTSI defects found in the Defendant's line of automobiles and contend that such evidence is relevant and allowable in light of *Hessen*. 915 F.2d 641, 650-51.

As explained in the court's analysis of the Defendant's fourth category, evidence of similar occurrences involving the Defendant's lines of automobiles must meet *Hessen*'s substantially similar standard. *Id*. This standard requires that the similar occurrences be factually similar and close in temporal proximity so as to not be overly prejudicial to the Defendant. The Defendant seeks to exclude any such evidence at this point, but that is not the standard espoused by *Hessen*. Evidence of similar occurrences stemming from an identical BTSI platform found in other Ford 2002 sport utility vehicles that resulted in the same type of harm is likely to meet this standard, *cf. Anderson v. Whittaker Corp.*, 894 F.2d 804, 813 (6th Cir. 1990), whereas evidence from similar occurrences stemming from the Defendant's line of motorcycles or sedans is not likely to meet this standard. *Cf. Morales v. American Honda Motor Co., Inc.*, 151 F.3d 500, 511 (6th Cir. 1998) (upholding trial court's decision in a motorbike products liability case to disallow portions of research which dealt not with motor bikes but with larger all-terrain vehicles). Therefore, there is no per se rule forbidding the use of similar occurrence evidence from a defendant's different lines of automobiles, and this court will wait to rule on any such evidence until such evidence is before the court.

Unlike "similar occurrence" evidence which involves prior incidents of the opposing party, evidence of similar incidents that do not involve the opposing party introduce different issues. The issue of undue prejudice to the defendant may be different while the issue of relevance is thrust to the forefront. *See Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396-97 (11th Cir. 1997) (upholding trial court's admission of rollover evidence obtained from "pointedly dissimilar" vehicles because "the evidence was both relevant and not unduly prejudicial"). Accordingly, such evidence may be relevant when it is used to illustrate some phenomena common to all automobiles of a particular type, as in *Heath*, but such evidence runs the risk of being irrelevant when it involves different vehicles and different part failures.

The court will withhold judgment as to the evidence of similar occurrences found in the Defendant's other line of automobiles and similar occurrences found in other car manufacturer's automobile lines until trial. Accordingly, the Plaintiffs are not to refer to evidence concerning these other defects and recalls without first taking that evidence up outside of the presence of the jury. The parties are directed to be prepared to discuss this matter in detail, including specific evidence expected to be offered, at the pretrial conference.

**6.**

The Defendant **sixth** seeks to exclude "any reference to, or evidence, testimony, or argument concerning Ford's state of mind for lack of foundation." (Doc. # 156 at 7). Specifically, the Defendant has four main objections: (1) to preclude testimony about Ford's decision-making process due to Plaintiffs' witness's lack of personal knowledge pursuant to Federal Rule of Evidence 602; (2) to preclude the testimony listed in (1) because the Plaintiffs'

experts have no scientific, technical, or otherwise specialized knowledge about Ford and its decision-making process, therefore violating Rule 702; (3) testimony about non-admissible documents or documents not in evidence violates the "best evidence" rule; and (4) the probative value of any of this evidence is substantially outweighed by unfair prejudice.  The Plaintiffs make no claim that they will seek to introduce any lay testimony about the Defendant's decision-making or knowledge or that they will attempt to offer testimony about exhibits not in evidence in violation of the "best evidence rule."  They do, however, assert that they will offer expert testimony to "show what Ford knew about the BTSI placed in the 2002 Mercury Mountaineer, about the effectiveness of the BTSI, what Ford could have done about it, and what Ford did do about it." (Doc. 165 at 7).  Essentially, the Plaintiffs' argument rests on the notion that if "the product in question is of a complex and technical nature such that a lay juror could not, in the absence of expert testimony, infer that a defective condition of the product caused the product's failure and caused the resulting injury to the plaintiff, expert testimony is a necessary component of a plaintiff's case." *Robinson v. Ford Motor Co.*, 967 F. Supp. 482, 485 (M.D. Ala. 1997).

In order to determine the validity and appropriate scope of an expert witness's testimony, this court is bound by the *Daubert* standard. *See Quiet Tech. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1340–41 (11th Cir. 2003).  The Eleventh Circuit requires this court to determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Quiet Tech*, 326 F.3d at 1340-41.  Therefore, should the court find that the Plaintiffs' safety engineer expert meets these requirements, then the court will have to determine the extent to

which that expert can testify as to the Defendant's documents and memoranda.  For instance, the expert may be allowed to testify as to the Defendant's documents if so relied upon–if a foundation is laid that they are the kind normally relied upon–so as to provide a complete picture for the jury; however, the expert "may not render any opinions regarding the state of mind, intent, motives or ethics of [the Defendant] . . . These matters are not the proper subject of expert opinion; they are matters to be argued by counsel based on the evidence." *In re Seroquel Products Liability Litigation*, No. 6:06–md–1769–Orl–22DAB, 2009 WL 3806436, *5 (M.D. Fla. July 20, 2009).

If the Defendant believes that the Plaintiffs' expert is going beyond the bounds of his qualifications, the Defendant can object and articulate this objection to the safety engineer expert's testimony when a question is asked at trial.  Until such testimony has been articulated or the court has been given more facts, it will not be able to determine whether particular testimony is within the expert's realm of expertise or if that particular evidence would be objectionable pursuant to Rule 403.

**7.**

The Defendant **seventh** seeks to exclude "evidence of post-sale and post-manufacture testing, analyses or remedial measure." (Doc. # 156 at 8).  The Defendant relies on Rule 407's prohibition against the introduction of evidence of remedial measures taken by a defendant after an accident.  The Plaintiffs counter that the Defendant's motion actually seeks to prevent the introduction of evidence like the Six Sigma Documents which were done before the accident giving rise to this case.  Under the language of Rule 407, measures taken before an accident do

not trigger the protections of Rule 407.  Committee Notes to Federal Rule of Evidence 407; *see Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978)[1].  Therefore, in so much as the Defendant seeks to preclude evidence of measures taken post-manufacture but pre-accident, the Defendant's motion is DENIED.  Regarding evidence that is both post-manufacture and post-accident, the Plaintiffs make no claim that they will seek to introduce any such evidence.  Therefore, this court, finding no reason not to preclude such testimony, GRANTS the Defendant's motion as to post-accident remedial measures.

## 8.

The Defendant **eighth** seeks to preclude Plaintiffs' "counsel from making the 'Golden Rule Appeal.'" (Doc. # 156 at 9).  The Plaintiffs offer no objection to this motion.  Having no reason to rule otherwise, this court GRANTS this aspect of the Defendant's motion, and the Plaintiffs' counsel are prohibited from asking the jurors to place themselves "in the Plaintiffs's shoes" or making similar arguments.

## 9.

The Defendant **ninth** seeks to preclude Plaintiffs' "counsel from discussing their personal feelings." (Doc. # 156 at 9).  The Plaintiffs do not object to this motion "as phrased."  Because this court requires the utmost professional conduct of counsel before it, the court

---

[1] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

GRANTS the Defendant's motion and counsel for both parties are to refrain from injecting their personal opinions at this trial, whether it be as to the justice of their cause, credibility of their witnesses, or otherwise, and also from attacking the integrity of opposing counsel.

**10.**

The Defendant **tenth** seeks to exclude "any reference to, or evidence, testimony, or argument concerning, Ford's financial condition, the wealth and/or poverty of the parties, and excluding any mention of punitive damages in Plaintiffs' opening statement." (Doc. # 156 at 10-11).  As to the evidence of the Defendant's wealth, the "long-standing Alabama law on the issue of admissibility of evidence of a defendant's wealth," is that "'evidence of a defendant's wealth is highly prejudicial and, therefore, inadmissible [during trial].'" *Ex parte Hsu*, 707 So. 2d 223, 225 (Ala.1997) (quoting *Southern Life & Health Ins. Co. v. Whitman*, 358 So. 2d 1025, 1026 (Ala. 1978) (brackets in original).  Because this court is sitting in diversity over this Alabama civil action, substantive Alabama law on the issue of admission of a defendant's wealth will apply.  This court agrees with the findings and the rationale in *Wilson v. Gillis Advertising Company.*  145 F.R.D. 578, 579-80 (N.D. Ala. 1993) (the rule governing the admissibility of evidence of a defendant's wealth "is so fundamental to the resolution of the issue of punitive damages under the Alabama law theories as to be effectively substantive and as a practical matter binding on a federal trial court when it tries an Alabama tort claim seeking punitive damages.").  Therefore, the court GRANTS this aspect of the Defendant's motion, and evidence of Defendant's wealth will not be admissible at any stage of the trial proceedings.

The Defendant also seeks to preclude any evidence of "references to its gross revenues,

profits, and . . . evidence of and reference to [the] sale of Mercury Mountaineers outside Alabama." (Doc. # 161 at 8). The United States Supreme Court has spoken directly to the issue of relevance of out-of-state conduct as to a jury's determination of punitive damages. In *State Farm Mutual Automobile Insurance v. Campbell*, the Court explained that a state does not "have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." 538 U.S. 408, 421 (2003). Therefore, it appears clear that United States Supreme Court precedent limits punitive damage awards against defendants to the extent that the defendant's conduct affected the victim's home state. *See*, *e.g.*, *BMW of North America v. Gore*, 517 U.S. 559, 572 (1996) ("the economic penalties that a State such as Alabama inflicts on those who transgress its laws, whether the penalties take the form of legislatively authorized fines or judicially imposed punitive damages, must be supported by the State's interest in protecting its own consumers and its own economy.").

Ford's objection to the admission of evidence of aggregate profits and revenue resulting from the national sale of Mercury Mountaineers is a valid objection under *State Farm* and *Gore* because the state of Alabama has no legitimate interest in sales to consumers outside of its state; however, Ford's motion seeks to exclude too much. While it is true that the defective product at issue is the Defendant's 2002 Mercury Mountaineer, the BTSI, the component which allegedly makes the Mercury Mountaineer defective, was part of all of Ford's U152 vehicle platform vehicles including the 2002 Mercury Mountaineer. Therefore, the Defendant's relevant in-state conduct would be the sale of all automobiles with the defective BTSI found on the U152 vehicle platforms, and would not be limited to just the sale of Mercury Mountaineers in Alabama. Accordingly, in so much as the Defendant's motion seeks to preclude evidence of sales of vehicles created on the U152 vehicle platform in Alabama, the motion is DENIED. However,

the Defendant is correct to seek to preclude evidence of out of state sales from being part of the jury's determination of punitive damages in this case, and so this court GRANTS that aspect of the Defendant's motion.

As to the mentioning of punitive damages in opening statement, the Plaintiffs say that, while they intend to offer evidence relevant to punitive damages, they will refrain from mentioning punitive damages in opening statements to the jury.  Therefore, this court GRANTS the Defendant's motion as to the mentioning of punitive damages in opening statements.

**11.**

The Defendant **eleventh** seeks to exclude "any reference to, or evidence, testimony, or argument concerning the Ford Pinto and other major product liability lawsuits or settlements." (Doc. # 156 at 11).  The Plaintiffs argue that testimony and evidence about the Ford Pinto could become relevant should the Defendant open the door with character evidence.  This court finds that any evidence about the Ford Pinto would be too far removed from the present case in time and factual circumstances to be relevant; however, this court cannot say that there is not some set of character evidence which the Defendant could offer that would open the door to the Ford Pinto issue.  Accordingly, should the Plaintiffs believe that the Defendant has opened the door to this issue, then the Plaintiffs should call this to the attention of the court outside the presence of the jury.  The court will then determine if the door has been opened to this testimony.  As to the Defendant's contention about the admission of settlement evidence, the Plaintiffs do not contest this, and the court finds that Rule 408 would exclude such evidence.  Therefore, the Defendant's motion as to this evidence is GRANTED, but subject to the possibility mentioned above.

**12.**

The Defendant **twelfth** seeks to exclude "reference to the presence or absence of Ford's corporate representative of any other person in the courtroom." (Doc. # 156 at 12). Specifically, the Defendant argues that this type of evidence is not relevant, and, if it is relevant, its probative value is substantially outweighed by the danger of unfair prejudice and should excluded under Rule 403. The Plaintiffs counter that the presence or absence of the Defendant's corporate representative is relevant under Rule 401 and therefore should be admissible under Rule 402. There is no requirement that a party or a corporate representative be present at trial. The court finds that the presence or absence of a corporate representative will not make the existence of any fact necessary to the Plaintiffs' claims any more or less probable, and is therefore irrelevant. To the extent that there could be any probative value, that would be substantially outweighed by the danger of unfair prejudice and jury confusion, under Rule 403. Accordingly, the Defendant's motion is GRANTED as to this evidence.

**13.**

The Defendant **thirteenth** seeks to exclude "evidence of discovery disputes." (Doc. # 156 at 13). The Plaintiffs do not intend to offer this evidence as long as the Defendant does not "open the door" to this evidence. Accordingly, this motion is GRANTED to the extent that Plaintiffs are not to refer to evidence concerning discovery disputes without first taking that evidence up outside of the presence of the jury.

**14.**

The Defendant **fourteenth** seeks to exclude "undisclosed expert opinions." (Doc. # 156 at 14).  The Plaintiffs do not intend to offer this evidence.  Having no reason to rule otherwise, this court will GRANT the Defendant's motion as to undisclosed expert opinions.

**15.**

The Defendant **fifteenth** seeks to exclude "certain opinions and testimony of Dr. Camille Peres." (Doc. # 156 at 15).  The Plaintiffs offer no objection to this motion.  Having no reason to rule otherwise, this court will GRANT the Defendant's motion as to Dr. Camille Peres.

**16.**

The Defendant **sixteenth** seeks to exclude "any evidence not produced during discovery." (Doc. # 156 at 15).  The Plaintiffs offer no objection to this motion unless it becomes clear that the Defendant has withheld appropriately discoverable evidence from the Plaintiffs.  Accordingly, this court will GRANT the Defendant's motion, but the Plaintiffs may seek to introduce such evidence outside the presence of the jury if the Defendant offers evidence previously withheld.

**17.**

The Defendant **seventeenth** seeks to exclude "media reports about alleged defects in the 2002 Mercury Mountaineer." (Doc. # 156 at 16). The Plaintiffs do not intend to offer this evidence as long as the Defendant does not "open the door" to this evidence. Accordingly, this motion is GRANTED, and Plaintiffs are not to refer to evidence concerning media reports about alleged defects in the 2002 Mercury Mountaineer without first taking that evidence up outside of the presence of the jury.

**18.**

Lastly, The Defendant requests the court to sequester the lay witnesses. ("The Rule") (Doc. # 156 at 17). The Plaintiffs offer no objection to this motion. The court GRANTS the Defendant's motion, and lay witnesses will be sequestered.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion in Limine is GRANTED in part and DENIED in part as set out above.

Done this 13th day of December, 2011.

/s/ W. Harold Albritton  
W. HAROLD ALBRITTON  
UNITED STATES DISTRICT JUDGE