IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MEREDITH CHADWICK RAY and PHILLIP RAY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION NO.  3:07cv175-WHA-TFM ) (WO) |
| FORD MOTOR COMPANY, | ) ) |
| Defendant. | ) |

**ORDER**

This cause is before the court on Defendant's Renewed Motion to Exclude Warranty Report (Doc. #211).  The Defendant asks this court to reconsider its December 13, 2011 Order (Doc. #186) only in so much as that Order allows the Plaintiffs to introduce, as Plaintiffs' exhibit 1077, Ford's 6 Sigma Report ("the Report").  Ford's central contentions are that the Report is irrelevant pursuant to Rule 402 of the Federal Rules of Evidence, or, even if relevant, the Report should be excluded pursuant to Rule 403 because its prejudicial effect far outweighs its probative value, and it is likely to confuse and mislead jurors.  For the reasons to be discussed below, the Defendant's Motion is DENIED in part and GRANTED in part.

The Defendant's first contention is that the Report is not probative of any element of the Rays' Alabama Extended Manufacturer Liability Doctrine ("AEMLD") claim.  The Defendant's argue that a product must be defective when it leaves the Defendant's possession in order to find them liable under the AEMLD.  *See*, *e.g.*, *Horn v. Fadal Machining Centers, LLC*, 972 So. 2d 63, 72 (Ala. 2007) ("An essential element of an AEMLD claim is proof that the product reached the consumer without substantial change in the condition in which it was sold.. . . However, the

mere fact that a product has been altered or modified does not necessarily relieve the manufacturer or seller of liability"). Furthermore, Ford argues that a defective product is one "which was sold 'in a defective condition unreasonably dangerous to the plaintiff.'" *Horn*, 972 So. 2d at 70 (quoting *Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132-33 (Ala.1976)). Ford also contends that nothing in the Report suggests that the 2002 Mercury Mountaineer was unreasonably dangerous when it entered the stream of commerce. Therefore, Ford's argument is that since the Report does not suggest that the product was unreasonably dangerous when it entered the stream, then the Report is irrelevant to the Rays' AEMLD claim. This court disagrees with Ford's characterization of this Report.

As the Report explains, the defect at issue did not become apparent until consumers began to use the product. There is nothing in the Report that would lead a reader to believe that the defect was added to the product later. Moreover, the presence of a defect is different from the time it takes consumers to observe the effects of the defect, and the Report speaks to the fact that U152 vehicles did not start to demonstrate the effect of the defect until the vehicle had reached certain mileage plateaus. *See* Doc. 188-30 at 7-10. Therefore, it appears clear that the defect discussed in the Report existed as of the time of the product entered the stream of commerce.

Furthermore, the Defendant characterizes this document as being concerned with consumer convenience and satisfaction, and not concerned with an unreasonably dangerous condition of the automobile. This court will not endorse one view or the other as to the Report but will let the jury, as the finder of fact, decide what weight and importance to give to the Report. What this court will decide is whether the Report is relevant to the Rays' AEMLD

claim. The Report speaks to problems with the U152 line BTSI and Ford's fix to those problems. All of the U152 vehicles in the Report are substantially similar to the Rays' vehicle, and the fact that other U152 vehicles had the same problem is relevant to the Rays' claim. More specifically, evidence that many U152 vehicles suffered similar problems stemming from a common faulty part, the BTSI, is probative of whether the product at issue was defectively designed when it entered the stream of commerce. Accordingly, this court finds that the Report is relevant under 402 as to the Plaintiffs' AEMLD claim.

The Defendant's second contention is that the Report is irrelevant because it is not probative of any aspect of Mrs. Ray's wantonness claim. *See Edmonson v. Cooper Cameron Corp.*, 374 F.Supp.2d 1103, 1106 (M.D. Ala. 2005) ("[u]nder Alabama law, there are four elements to establish a case of negligence or wantonness: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury."); *Ex parte Essary,* 992 So.2d 5, 12 (Ala. 2007) (wantonness is "reckless indifference to a known danger likely to inflict injury"). The Defendant's argue, as they did in their Motion for Judgment on the Pleadings, that Mrs. Ray's claim of wantonness utilizes either a wanton design, manufacture, testing, and sale theory or a "failure to recall" theory and that the "duty" element of wantonness would necessarily be related to either theory. The Defendant argues that there is no "duty to recall" in Alabama citing a case from this court, *see Lampley v. Bridgestone Firestone, Inc.*, No. 90-A-907-N (M.D. Ala. May 31, 1992), and that the 2005 Report is not probative of a breach of the duty of the Defendant to Plaintiffs related to the design, manufacture, testing, and sale of the 2002 Mercury Mountaineer because the Report post-dates Ford's design, manufacture, testing, and sale of the 2002 Mercury Mountaineer. However, as this court explained in its Order denying the Defendant's Motion for Judgment on

the Pleadings, the Plaintiffs' theory of wantonness is clearly a "failure to warn" theory which is cognizable under Alabama law.  *See* Doc. 218; *see also Gen. Motors Corp. v. Johnston*, 592 So. 2d 1054, 1060-61 (Ala. 1992).  It is clear that the Report is probative of the alleged breach of the Defendant's duty to warn Plaintiffs of the dangerous condition of their automobile.  Accordingly, this court finds that the Report is relevant under 402 as to the Plaintiffs' wantonness claim.

The Defendant's last contention is that the jury is likely to misconstrue the Report because it contains hearsay consumer complaint evidence of 28 different Ford vehicles.  Moreover, Ford's concern is that while the Report does describe a new time delay which prevents the swing arm from contacting the BTSI pin, the Report specifically states that it contains no data as to whether this new timing delay will fix the shift out of park issue because such data was not available at the time of the report.  Ford's recommended solution is to exclude the report in its entirety, but this court disagrees.

As to Ford's concern about the jury misconstruing the evidence of the 28 different Ford vehicles mentioned in the Report, this court finds that other occurrence "evidence is only admissible if conditions substantially similar to the [present] occurrence caused the prior accidents, and the prior incidents were not too remote in time." *Hessen v. Jaguar Cars, Inc.*, 915 F.2d 641, 649 (11th Cir. 1990).  Therefore, the only vehicles that can meet the substantial similarity inquiry are those that are part of the U152 line of Ford's vehicles and that suffered from defects related to the BTSI.  *See*, *e.g.*, *Johnston*, 592 So. 2d at 1058-59.  Moreover, because evidence of defects not at issue in the Rays' case are irrelevant, the Report should be limited to the evidence relating only to BTSI failure in U152 platform vehicles.  *Cf. Id*. (upholding the trial court's decision to allow evidence of other vehicles from the defendant's line because each

similar occurrence concerned identical engines with stalling problems similar to the alleged defect in the plaintiff's automobile) .  In so much as the Report includes evidence of non-BTSI related issues in U152 vehicles or evidence of defects found in non-U152 vehicles, such evidence is excluded.  Therefore, looking at the Report, the portions of page 4 that contain costs for non-U152 vehicles will be excluded.  As to the remainder of the Report, this court finds that evidence concerning substantially similar or identical vehicles will not confuse or mislead the jury but will be properly before them.  The Defendant will have the opportunity to present fully its own explanation of the Report.

As to the Defendant's hearsay concerns, this court finds that the Report does not contain inadmissible hearsay.  The Defendant's contend that the Report contains hearsay customer complaint evidence, and the Plaintiffs counter by arguing that the Report itself is admissible as an admission under Rule 801(d)(2) of the Rules of Evidence and that the Report falls under the Rule 803(6) business records exception to the hearsay rule because it is Ford's record of an internal investigation made in the normal course of business.  Doc. 213 at 4-5 (discussing the Report as Plaintiffs' exhibit 1077).  Moreover, the Plaintiffs argue that the customer complaint information is not being offered for the truth of the matter asserted but rather as notice to Ford about the existence of the problems with the U152 BTSI.  *Id*. at 5.  Upon consideration of both positions, the court agrees with the Plaintiffs.

> In order to meet the business records hearsay requirement, the Report must be
>
>> made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the [Report], all as shown by the testimony of the custodian or other qualified witness.

*Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1243 (11th

Cir. 2009) (quoting Fed. R. Evid. 803(6)).  Furthermore, "[t]he touchstone of admissibility under the business records exception to the hearsay rule is reliability." *Equity Lifestyle Props., Inc.*, 556 F.3d at 1243 (quoting *United States v. Bueno-Sierra*, 99 F.3d 375, 378 (11th Cir. 1996)). The Report was created by Ford and relied on by Ford in its attempt to answer the customer complaints related to the U152 BTSI.  Accordingly, the Report is the type of document with which Rule 803(6) concerns itself, but the court will reserve judgment as to the admissibility of the Report pursuant to Rule 803(6) until the Plaintiffs have been given the opportunity to lay the appropriate foundation.

However, in so much as the Report contains admissions of the Defendant, it is admissible under Rule 801(d)(2) without any further foundation.  All that is required for an admission to be admissible at trial is that it is made by the Defendant or an appropriate agent and that it is antithetical to the Defendant's position at trial.  Fed. R. Evid. 801(d)(2).  The Report was created by Ford's employees and contains evidence that the U152 BTSI was defective.  In other words, the Report was created by Ford's agents and contains evidence which runs contrary to Ford's position that the U152 BTSI was not defective.  Therefore, those portions of the document which contain admissions are admissible under Rule 801(d)(2).

The last hearsay issue is the admissibility of the customer complaint information utilized by Ford in creating the Report.  The Plaintiffs argue that they do not intend to proffer that evidence for the truth of the matter asserted but simply as evidence of Ford's notice of the fact that there were complaints about the BTSI.  Because the customer complaint evidence is not offered for the truth of the matter asserted, then that evidence does not fall into the category of hearsay as defined by Rule 801(c).  Accordingly, the evidence of the customer complaints is

admissible as part of the Report but will be accompanied by a limiting instruction to the jury as to the appropriate purposes the customer complaint evidence may be considered.

## **CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that the Defendant's Motion for Reconsideration is DENIED in part and GRANTED in part as follows:

1. Portions of page 4 of the Report will be excluded as outlined above, so that only the first line, "Expl/Mntr - Column" is shown;

2. The court will provide a limiting instruction as to what purposes evidence of consumer complaints may be considered by the jury; and

3. In all other respects, the Defendant's Motion is DENIED.

DONE this 23rd day of December, 2011.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE